1
2
3
4
5
6                      IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8
9   WILLIAM ROBERT CLARKE,              )
                                        )    NO.    CV 08-604-TUC-DCB (BPV)
10              Plaintiff,              )
                                        )
11          vs.                         )    **REPORT AND RECOMMENDATION**
                                        )
12  MICHAEL J. ASTRUE, Commissioner of)
    Social Security,                    )
13                                      )
                Defendant.              )
14  _____)

15          Plaintiff filed this action for review of the final decision of the Commissioner for

16  Social Security pursuant to 42 U.S.C. §§ 405(g).  The case has been referred to the United

17  States Magistrate Judge pursuant to the Rules of Practice of this Court.

18          Pending before the Court is Plaintiff's appeal of the final decision of the

19  Commissioner denying benefits.  Plaintiff filed an opening brief on June 22, 2009 (Doc. No.

20  13)[1], Defendant filed a brief in opposition on August 27, 2009 (Doc. No. 17), and a reply

21  brief was filed on September 14, 2009 (Doc. No. 19). For the following reasons, the

22  Magistrate Judge recommends that the ALJ's decision be reversed and the matter remanded

23  for an immediate award of benefits.

24  **I.    PROCEDURAL HISTORY**

25          Plaintiff filed an Application for Social Security Disability Insurance Benefits and

26  Supplemental Security Income (SSI) Benefits on March 16, 2006, alleging that he had

27  suffered from a disability since August 30, 2005. (Transcript/Administrative Record ("Tr.")

28  _____

        [1]  "Doc. No." refers to documents in this Court's file.

80-85)  Plaintiff alleged he was disabled due to low back pain and spasm in back and legs, right elbow and left ankle.  (Tr. 99 )

The Social Security Administration (SSA) denied Plaintiff's Application initially, and on reconsideration.  (Tr. 34-38, 43-46, 54-60)  On reconsideration the SSA considered the additional allegations of fibromyalgia and depression.  (Tr. 38)  Plaintiff requested review (Tr. 5), and on October 25, 2007, appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Norman R. Buls.  (Tr. 20-32)  On January 23, 2008, the ALJ found Plaintiff was not disabled because the "evidence of record is not fully supportive of a continuous 12 month period or more of a disabling impairment."  (Tr. 16)

Plaintiff requested review of the decision by the Social Security Administration's Appeals Council.  (Tr. 62)  The Appeals Council denied review on August 14, 2008, making the decision of the ALJ the final decision of the Commissioner.  (Tr. 4-8)  *See* 20 C.F.R. §§ 404.981.  Plaintiff timely filed the instant Complaint in U.S. District Court appealing the Commissioner's final decision (Doc. No. 1).

**II.    THE COMMISSIONER'S DECISION AND EVIDENCE PRESENTED**

A.    Plaintiff's Education and Work History

Plaintiff was born on October 1, 1958 , and was forty-nine year's old on the ALJ's date of decision.  (Tr. 8, 94)  Plaintiff had obtained his GED.  (Tr. 104)  Plaintiff's past work history, dating from 1983 to 2005, consisted of bakery installer at a grocery store, and cook and kitchen manager at a restaurant.  (Tr. 100)

B.    Plaintiff's Testimony

On October 27, 2007, Plaintiff appeared before ALJ Buls, with an attorney representative.  (Tr. 20-33)  Exhibits 1A to 26F were received into evidence, and the record left open for the submission of MRI and x-ray interpretations.  (Tr. 22, 31-32)  Plaintiff testified that he last worked as a cook in August, 2005.  He left that job because his lower back pain was getting worse.  (Tr. 25)  Plaintiff testified that he has pain in his whole body, he can't function or get comfortable during the day, and its hard for him to concentrate on anything.  (Tr. 26)  Plaintiff had a recent MRI performed on his back, and his doctors said he

had significantly more damage than the MRI he had two years ago, showing deterioration and muscle contraction. (Tr. 27) Plaintiff walks a little, but cannot walk vigorously. (Tr. 27) When Plaintiff informed the ALJ that vigorous walking results in him being on his back for two days, the ALJ advised him that he's got to keep doing it. (Tr. 28) Plaintiff said he went to a therapeutic pool twice a week for a month, doing the exercises, and he was "just miserable" and it got to a point he couldn't even take himself to the pool. (Tr. 29)

Plaintiff described his pain as sharp and stabbing in his lower back, and it goes down his hips and into his legs. (Tr. 30) In the course of a day, Plaintiff takes his pain medication, and doesn't do much in the morning, but tries to get out in the afternoon and walk around a bit. (Tr. 30) Afterwards, he usually lies down. (Tr. 30) He goes to the store, about once a week, and his 81 year old mother drives while he leans back in the car. (Tr. 31) He doesn't read, he has no hobbies or social life. (Tr. 31) He also has arthritis in his shoulders. (Tr. 32)

C.    Plaintiff's Medical History - Physical Impairment

1.    *Plaintiff's Treating Physicians*

On September 19, 2005, Plaintiff sought medical treatment at the Southern Arizona VA Healthcare System for low back pain, lasting for a month, becoming worse over the last three days, without any trauma or acute injury. (Tr. 297) Imaging of Plaintiff's right spine on September 19, 2005, revealed moderate degenerative disk disease in the thoracolumbar junction region, with mild facet hypertrophy in the lower lumbar region. (Tr. 245) No neurological symtpoms or deficits were found. (Tr. 292) Plaintiff was assessed with a lumbosacral spine strain of unknown etiology. (Tr. 295) Plaintiff was prescribed Vicodan for pain and Soma for muscle spasm. (Tr. 296) Plaintiff was referred to physical therapy/rehabilitation for his acute lower back pain. (Tr. 254) Plaintiff's physical therapist noted that Plaintiff would benefit from conservative therapy to attempt to manage symptoms before any more aggressive measures needed to be taken. (Tr. 282) Plaintiff was trained to use a home TENS unit, and good results were initially noted. (Tr. 253) Plaintiff was prescribed methadone for pain. (Tr. 291)

In November, 2005, Plaintiff reported that after going to rehabilitation, doing exercise

and using the TENS unit he was feeling "worse instead of better" and that he did not feel that Salsalate or Vicodin were effective for pain, and the use of over-the-counter medications were also not helpful. (Tr. 271) Plaintiff was instructed to continue physical therapy and add pool exercises. (Tr. 272)

An MRI in December, 2005, showed mostly mild degenerative changes involving the anterior portions of multiple intervertebral disks. (Tr. 416-17)

Plaintiff was seen for a rheumatology consult in May, 2006. (Tr. 329) Plaintiff reported joint and soft tissue pain, ongoing for two years. He also reported sleep problems. Plaintiff reported that physical therapy had not been beneficial, and trazadone, prescribed for sleeping problems, was also of no benefit. Plaintiff denied depression. (Tr. 329) Plaintiff was assessed as fulfilling the diagnosis of fibromyalgia, but had no symptoms of inflammatory arthritis. (Tr. 330) Plaintiff was advised that fibromyalgia would not give him a "crippling condition" and that he should do physical activities, *i.e.* walking, as much as possible. Plaintiff was prescribed amitryptyline for sleep and was continued on methadone. (Tr. 330-31)

Plaintiff was seen at the pain clinic for trigger point injections on July 13 and 20, 2006. The trigger points were identified upon examination for pain affecting walking. (Tr. 488-89, 485-86) Plaintiff received prompt relief. (Tr. 489, 486)

Plaintiff obtained a kinesiotherapy assessment on August 29, 2006. (Tr. 481-84) Plaintiff reported using stretches, exercise, heat/ice, positioning and medications as pain interventions, but that he had given up most of his enjoyable activities secondary to pain. (Tr. 481) It was recommended that Plaintiff continue strengthening and stretching exercises, use of self pain management tools, INF (Interferential therapy - a form of TENS), and pool exercises.

On August 31, 2006, Plaintiff was seen by Dr. Steven Zeiller, of Tucson Orthopaedic Institute (TOI), for chronic low back pain. (Tr. 544) Dr. Zeiller was not able to determine any kind of spinal cord compression, or nerve root compression, but opined that Plaintiff had axial low back pain and a component of sacroiliac dysfunction. (Tr. 544) Dr. Zeiller

recommended pain management with injections and non-narcotic alternatives. (Tr. 544) Dr. Zeiller referred Plaintiff to another doctor at TOI for assessment of his chronic back pain and the possibility of spinal injections. Dr. Feldman assessed Plaintiff with chronic low back pain, and diffuse lumbosacral myofascial pain with central sensitization and superficial muscular tenderness. (Tr. 551) Dr. Feldman recommended physical therapy and noted that Plaintiff was concerned about therapy considering the amount of pain he was in, but recommended starting in an aquatic program and progressing very slowly. Dr. Feldman was hopeful for slow and steady progress with physical therapy. (Tr. 551)

Plaintiff was treated by Dr. Andrew Jones, a clinical psychologist; initially presenting for a pain psychology assessment on August 28, 2006. (Tr. 483-84) Dr. Jones found that "PCI validity scales demonstrate no particular difficulties with extreme pain beliefs or pain symptom magnification. Subscales do indicate moderate difficulty with depressed mood, feelings of hostility, and some alienation." (Tr. 483) Dr. Jones recommended Plaintiff attend a sleep management group, and consider also starting pain cognitive therapy group in the future. (Tr. 484)

Plaintiff was noted as having "good coping skills" and "good insight into his situation" at his kinesiotherapy assessment on August 29, 2006. (Tr. 481)

Plaintiff continued with pain therapy, and, on August 31, 2006, it was noted that he appeared less depressed, was using the IFN, and his daily walking was increasing up to 3/4 mile walks. (Tr. 617) Plaintiff received trigger point injections with resulting prompt relief. (Tr. 617-18)

Plaintiff attended a sleep psychotherapy group in September, 2006, and "was attentive throughout and participated in discussions." (Tr. 475-76)

Imaging of Plaintiff's knee revealed no evidence of bony injuries or significant arthritis. (Tr. 523)

Plaintiff attended chronic pain therapy on October 4, 2006, and was noted to be "very motivated to integrate pain management intervention." (Tr. 472) Plaintiff reported that he felt his pain was not yet well controlled, but his therapist noted that he appears to be doing

well and demonstrates good decisions when choosing interventions. (Tr. 473) Plaintiff noted in his next therapy session on October 26, 2006, that he continued to have difficulty with everyday activities like dressing, bathing, coming to a stand, *etc*. (Tr. 471) The therapist noted again that he was doing well and demonstrating good decisions, but that he needs a personal pain plan, and has a prosthetics appointment pending and knee supports for helping with pain were under consideration. (Tr. 471) Treatment notes indicate Plaintiff continued in therapy from October through December, 2006. (Tr. 598, 607-10 ) Plaintiff reported obtaining help from using knee braces, the INF, and the pool therapy.

Imaging of Plaintiff's shoulder in October, 2006, revealed mild left and mild-to-moderate right AC joint degenerative changes. (Tr. 523)

At Plaintiff's follow up visit at the pain clinic on November 30, 2006, he reported an increase in his daily walking distances. (Tr. 603) Plaintiff received trigger point injections and obtained prompt pain relief. (Tr. 603-04) It was noted that Plaintiff appeared less depressed, though he was in mild distress due to pain. (Tr. 603)

At a Rheumatology follow up appointment on December 7, 2006, with Dr. Larissa Szeykoa an internal medicine resident/student, for treatment of fibromyalgia, Plaintiff reported that he had not been exercising regularly because this makes him feel worse the next day, that he is not sleeping well because of discomfort, and that the injections he received relieved his pain for four days. (Tr. 600) Dr. Szeyko recommended a trial of guafenesen for fibromyalgia, flexeril for associated muscle spasms, and strongly encourged Plaintiff to continue his exercise and resume some form of employment in order to improve his symptoms. (Tr. 601) Dr. Barbara Bode, the staff Rheumatologist, agreed with Dr. Szeykoa's diagnosis and plan. (Tr. 601-02)

An MRI obtained in October, 2007, showed "no significant changes in degenerative findings" from the December, 2005 report.

>        2.    *State Agency Physicians*

>              a.    <u>Examining Physicians</u>

Plaintiff was referred by DDS to Dr. James Rau for a psychiatric consultation on

December 21, 2006. (Tr. 564) Dr. Rau diagnosed Plaintiff with major depressive disorder, moderate, without psychosis, and pain disorder associated with both psychological factors and a general medical condition. (Tr. 567) Dr. Rau opined that the prognosis for any near-term resolution of psychiatric symptoms was "quite guarded."

Dr. Rau completed a Medical Source Statement Of Ability To Do Work Related Activities (Mental). (Tr. 568-571) Dr. Rau noted no limitations in Plaintiff's ability to remember locations and work like procedures, make simple work related decisions, the ability to travel in unfamiliar places or use public transportation, and no evidence of limitations in the ability to set realistic goals ro make plans independently of others. (TR. 568-571) Dr. Rau noted mild limitations in Plaintiff's ability to understand, remember and carry out very short and simple instructions, or detailed instructions, sustain an ordinary routine without special supervision, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation. (Tr. 568-71) Dr. Rau noted moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, and to interact appropriately with the general public. (Tr. 569-71) Dr. Rau noted marked limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 570-71)

Plaintiff was examined by a second DDS doctor, Jerome Rothbaum, M.D., on February 14, 2007. (Tr. 682) Dr. Rothbaum's impression was that Plaintiff had low back pain, primarily myofascial in origin, probably fibromyalgia, chronic pain syndrome, history of hypertensive vascular disease, depression, and a mediastinal cyst, benign. Dr. Rothbaum

opined that Plaintiff's complaints of pain both historically and on examination were not in consonance with the radiographic findings. (Tr. 685)

Dr. Rothbaum completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical). (Tr. 687-691) Dr. Rothbaum diagnosed Plaintiff with probable fibromyalgia, low back pain (myofascial), history of hypertension, mediastinal cyst, and depression, expected to impose limitations for 12 continuous months. (Tr. 687) Dr. Rothbaum noted that Plaintiff was capable of the following work-related activities: Lift/carry 50 pounds occasionally and 25 pounds frequently. Stand/walk at least six hours per an eight-hour workday, with the need to rest for five minutes hourly. Sit at least six hours per an eight-hour workday, with the need to shift position every 30-40 minutes briefly. Unlimited handling, fingering and feeling. Occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. No climbing of ladders, robes or scaffolds. pushing and pulling. Restrictions of working around heights and moving machinery. (Tr. 687-690)

b.  Non-Examining Physicians

Plaintiff was evaluated by a Disability Determinations Services ("DDS") medical consultant, Robert Estes, on June 20, 2006. (Tr. 434-441) Dr. Estes completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff was capable of the following work-related activities: Lift/carry 50 pounds occasionally and 25 pounds frequently. Stand/walk about six hours per an eight-hour workday. Sit about six hours per an eight-hour workday. Unlimited pushing and pulling. Dr. Estes opined that Plaintiff had "persistent pain but an absence of significant signs of functional loss beyond imaging evidence of mild lumbosacral degenerative disease, and some contractures of elbows (mild), with clinical suspicion of fibromyalgia but no signs of physical loss related to same despite multiple medical encounters." (Tr. 435) Occasional postural limitations were noted for climbing ladder, rope or scaffolds. No manipulative, visual, communicative, or environmental limitations, except for avoidance of hazards. (Tr. 437-38)

The DDS physician noted that no treating or examining source statements regarding

Plaintiff's physical capacities were in the file. (Tr. 440) The physician further noted that "ADLs [Activities of Daily Living - Function Report] indicate multiple limitations but subjective pain, and not [sp] objective signs of physical loss, account for claimant's alleged severe somatic impairments. While pain is credible, lengthy list of allegations strain credibility - - very tired, lacks sleep, activities very limited, ability to lift only 20 pounds, limited standing time. Credibility is less than ideal." (Tr. 441)

Dr. Goldberg, a Disability Determinations Services ("DDS") doctor, completed a Psychiatric Review Technique form on June 16, 2006 based on the review of medical evidence in the record. (Tr. 420-432) Dr. Goldberg found no medically determinable impairment, and opined that there is very little medical evidence of record to support any diagnosis. Although Plaintiff had commented once that he had a little depression due to his medical problems, at a subsequent visit he was doing "OK." (Tr. 420, 432)

Dr. Paul Tangeman, a medical consultant with DDS, completed a Mental Residual Functional Capacity Assessment on January 23, 2007. (Tr. 663-665) Dr. Tangeman noted moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 663-664) No other significant limitations were noted.

Dr. Tangeman completed a Psychiatric Review Technique, noting an RFC assessment was necessary. Dr. Tangeman noted category 12.04 affective disorder, with disturbance of mood accompanied by a full or partial manic or depressive symptom, as evidenced by depressive syndrome consisting of anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings

of guilt or worthlessness, and difficulty concentrating. Dr. Tangeman also noted a category 12.07 somatoform disorder, with physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms, as evidenced by a medically determinable impairment of pain disorder. (Tr. 667-73) Dr. Tangeman noted a moderate degree of difficulty in maintaining concentration, persistence, or pace, and in maintaining social function. (Tr. 677)

      D.    The Commissioner's Decision

      On July 6, 2005, the ALJ made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.     The claimant has not engaged in substantial gainful activity since August 30, 2005, the alleged onset date.

3.     The claimant has the following severe impairment: A back disorder.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals on e of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform the full range of medium work.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on October 1, 1958, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2005 through the date of this decision.

(Tr. 13-18)

      The ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning

- 10 -

the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 17) The ALJ noted that Plaintiff testified to an inability to work due to debilitating back pain and leg pain, but that the objective medical findings and the level of treatment are not suggestive of this level of severity. (Tr. 17) In the absence of objective medical evidence to support Plaintiff's allegations, the ALJ gave minimal weight to his testimony. (Tr. 17) The ALJ concluded that Plaintiff's complaints regarding the frequency, severity and duration of his back pain and lower extremity pain do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found. (Tr. 18)

The ALJ gave minimal weight to Dr. Rau's marked limitations and assessment of disability, finding them unsupported by the objective medical findings. (Tr. 15) The ALJ found no longitudinal confirmation of consistently severe mental limitations, and no evidence that, even if Plaintiff's mental impairments were severe when he was evaluated by Dr. Rau, there was no evidence his impairments continued to be so severe for a continuous period of 12 months.

The ALJ found that Dr. Rothbaum's findings and assessments allow for the performance of a wide range of light work. (Tr. 16)

The ALJ found that Plaintiff's past relevant work required heavy exertion, and, accordingly, Plaintiff is unable to perform his past relevant work. (Tr. 18) The ALJ found that, based on a residual functional capacity for the full range of medium work, considering the Plaintiff's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.29.

**III.  ISSUES**

A.  Plaintiff's Position

Plaintiff asserts that 1) the ALJ failed to ascribe weight to the opinions of a number of treating and examining physicians and failed to justify adequately his reasons for jettisoning those opinions; and 2) the ALJ failed to follow the applicable standard for determining the credibility of a claimant's reports of pain. (Doc. No. 13, p.2)

B.    Defendant's Position

Defendant contends that 1) Dr. Rau is the only doctor Plaintiff references who actually assessed an opinion that the ALJ rejected and that the ALJ properly rejected some of the findings of Dr. Rau; and 2) the ALJ properly concluded that Plaintiff's account of disabling limitations was not credible.  (Doc. No. 18, p. 5, 7)

IV.    **DISCUSSION**

A.    Standard of Review

An individual is entitled to Title II Social Security Disability Insurance benefits ("SSDIB") if the individual is insured for those benefits, has not attained retirement age, has applied for those benefits, and is disabled.  42 U.S.C. § 423(a)(1).  An individual is entitled to Title XVI Supplemental Security Income Disability benefits ("SSI") if the individual is disabled and meets certain eligibility requirements.  42 U.S.C. § 1381a.  The definition of disability for SSDIB and SSI purposes is the same: the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Compare* 42 U.S.C. § 423(d)(1)(A) *with* 42 U.S.C. § 1382c (a)(3)(A).

The Ninth Circuit has stated that "'a claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy.'" *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990)).

The claimant has the burden to establish a prima facie case showing an inability to engage in previous occupations. *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982). The burden then shifts to the Commissioner  to show that other substantial work, for which the claimant is qualified, exists in the national economy.  *Id*  (citing *Hall v. Secretary of HEW*, 602 F.2d 1372, 1375 (9th Cir. 1979); *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978)).

The court will set aside a denial of benefits only if the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982), *Thompson*, 665 F.2d at 939; 42 U.S.C. § 405(g)). In determining whether there is substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

Substantial evidence is "more than a scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly. Reviewing courts must consider the evidence that supports as well as detracts from the examiner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Moreover, "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016,1019 (9th Cir. 1992).

Disability claims are evaluated pursuant to a five-step sequential process. 20 C.F.R. §§404.1520, 416.920; *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b). If so, then the claimant is not disabled under the Act and benefits are denied. *Id* If the claimant is not engaged in substantial gainful activity, the ALJ then proceeds to step two which requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts the claimant's physical or mental ability

to do basic work activities. *Id* If the ALJ concludes that the impairment is not severe, the claim is denied. *Id* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled and no further inquiry is necessary. If a decision cannot be made based on the claimant's then current work activity or on medical facts alone because the claimant's impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step. The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity ("RFC") to perform past work. 20 C.F.R. §§ 404.1520(e). If the ALJ concludes that the claimant has RFC to perform past work, then the claim is denied. *Id* However, if the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f). At step five, in determining whether the claimant retained the ability to perform other work, the ALJ may refer to Medical Vocational Guidelines ("grids") promulgated by the SSA. *Desrosiers*, 846 F.2d at 576-577. The grids are a valid basis for denying claims where they accurately describe the claimant's abilities and limitations. *Heckler v. Campbell*, 461 U.S. 458, 462, n.5 (1983). However, because the grids are based on exertional or strength factors, where the claimant has significant nonexertional limitations, the grids do not apply. *Penny*, 2 F.3d at 958-959; *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). Where the grids do not apply, the ALJ must use a vocational expert in making a determination at step five. *Desrosiers*, 846 F.2d at 580.

A denial of Social Security benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987). When the ALJ has applied an incorrect legal standard in reaching a decision, we must

remand unless, as a matter of law, the result could not be affected.  *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n.9 (1977); *Sagebrush Rebellion, Inc. V. Hodel*, 790 F.2d 760, 765 (9th Cir. 1986) (agency may rely on harmless error rule only when its mistake had no bearing on the substance of the decision).

        B.    <u>Medical Source Opinions</u>

      The Ninth Circuit distinguishes among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians);  (2) those who examine but do not treat the claimant (examining physicians);  and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

      "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (citing C.F.R. § 404.1527)."Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195,  1202 (9th  Cir. 2001) (citing *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d).  In addition, the regulations give more weight to opinions that are explained than to those that are not and more weight to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists. *Holohan*, 246 F.3d  at  1202 (citing 20 C.F.R.  §§   404.1527(d)(5) and 404.1527(d)(3)).    The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester,* 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

      In order to establish clear and convincing reasons to reject an opinion, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the facts and evidence, and make findings. *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester,* 81 F.3d at 831 (citations omitted). Furthermore, the Ninth Circuit has held that the report of a non-treating, non-examining physician, even with the ALJ's own observance of a claimant's demeanor at the hearing, does not constitute substantial evidence. *Id.*

The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d at 632 (citing § 404.1527). Treating source medical opinions are still entitled to deference and, in many cases, will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; see also *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.")

C.     Analysis - Medical Source Opinions

Plaintiff suggests that the ALJ erred by giving no weight to Dr. Rau's opinion. Implicit in the ALJ's findings at step two of the disability evaluation analysis, that Plantiff had only a severe impairment of "back disorder," is the finding that Plaintiff's depression was not a "severe" impairment. The ALJ determined that Dr. Rau's marked limitations were entitled to minimal weight because they were not supported by the objective medical findings. (Tr. 15) The ALJ also gave Dr. Rau's disability assessment minimal weight because there was no longitudinal confirmation of consistently severe mental limitations. (Tr. 15)

"[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The ALJ may not reject Dr. Rau's opinion solely

for lack of objective findings. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)(finding that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity required by caselaw) The ALJ must do more than offer conclusions, rather, the ALJ must set forth interpretations and explain why they, rather than the doctors', are correct. *Embrey,* 849 F.2d at 421-22. In this case, the ALJ did not offer any explanation for rejecting Dr. Rau's assessment, much less provide detail for his reasoning. Thus, the ALJ erred.

The ALJ further noted that, even if Dr. Rau's opinion regarding the severity of Plaintiff's impairments is given weight, that there is no evidence his impairment continued to be so severe for a continuous period of 12 months.

The record indicates that, in May, 2006, at a rheumatology consult, Plaintiff denied that he was depressed. A reviewing DDS physician noted, in June, 2006, that Plaintiff had once commented that he had a little depression due to his medical problems. In August, 2006, Dr. Jones, Plaintiff's treating psychologist, evaluated Plaintiff using several pain related questionnaires, and, while not providing a medical diagnosis, *per se*, he noted that the testing indicated moderate difficulty with depressed mood. (Tr. 483) Dr. Jones recommended cognitive therapy. (Tr. 485) Dr. Jones was not asked to provide a disability assessment. Thereafter, from August to November, 2006, treatment notes from the pain clinic indicated that, at times, he appeared less depressed. It was not until Dr. Rau's assessment in December, 2006, that he was diagnosed with major depressive disorder. Dr. Rau noted that Plaintiff was not on any medication, but was attending monthly counseling sessions. Dr. Rau opined that the prognosis for any near-term resolution of his psychiatric symptoms was quite guarded. In February, 2007, the consulting DDS physician, Dr. Rothbaum, confirmed the depression diagnosis. There is no indication in the record that Plaintiff obtained further treatment for his depression after these diagnoses as no further mental health records were submitted before the Commissioner made his final decision in October, 2007.

Thus, the medical evidence of record supports the ALJ's finding that the record did

not demonstrate that the marked limitations noted by Dr. Rau persisted for a continuous period of 12 months.

The ALJ did not reject, or give less weight to, Dr. Rau's opinion that Plaintiff's depression resulted in several categories of mild to moderate limitations in his ability to do work related activities in the regular work setting. Nor did the ALJ find that these limitations would not last for a continuous 12 month period. This does not, however, automatically result in a determination that the ALJ erred by relying on the grids without the assistance of a vocational expert. *See Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007)(commenting that the Ninth Circuit has not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitations.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 18) When a claimant establishes that he suffers from a severe impairment that prevents him from doing his past relevant work, he "has made a prima facie showing of disability" and the analysis moves to step five of the disability determination process. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.1999). *See also* 20 C.F.R. § 416.920(g). At step five, the Commissioner has the burden "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. *See also* 20 C.F.R. § 416.920(g).

There are two ways the Commissioner can meet the burden of showing that there is other work in significant numbers that the claimant can perform: (1) by the testimony of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines, *i.e.* the grids, at 20 C.F.R. pt. 404, subpt, P, app. 2. *Tackett*, 180 F.3d at 1100-1101. In this case, the ALJ did not call a vocational expert to testify but instead relied on the grids to determine that Plaintiff was not disabled. "The ALJ may rely on the grids alone to show the availability of jobs for the claimant 'only when the grids accurately and completely describe the claimant's abilities and limitations.' " *Id*. (quoting *Jones,* 760 F.2d at 998). The grids " 'provide for the

evaluation of claimants asserting both exertional and nonexertional limitations .[2]" *Hoopai* 499 F.3d at 1075 (quoting *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir.1986), *amended* 794 F.2d 1348 (9th Cir.1986)). *See also Tackett*, 180 F.3d at 1102 ("the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids.") However, "the grids are inapplicable '[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.' " *Hoopai*, 499 F.3d at 1075 (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988)). Therefore, the ALJ should first determine whether claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. *Tackett*, 180 F.3d at 1102 (citation omitted).

Once a claimant has demonstrated that he is not engaged in substantial gainful activity, the ALJ must proceed to step two to determine whether the claimant has a medically severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 416.920(c). Under the regulations, "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). *See also Bowen v. Yuckett*, 482 U.S. 137 (1987) (at step two, the Commissioner makes an initial determination of medical severity without consideration of the claimant's age, education, and experience); SSR 96-3p (an impairment is "not severe" when medical evidence establishes only "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.") Basic work activities are "the abilities and aptitudes necessary to do most jobs" such as walking, standing sitting and other physical functions, understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations;

---

[2] "A non-exertional impairment is an impairment 'that limits [the claimant's] ability to work without directly affecting his [ ] strength.' " *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001) (quoting *Desrosiers*, 846 F.2d at 579)).

and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(c).

The step-two inquiry is a *de minimus* screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). "The regulations guiding the step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai*, 499 F.3d at 1075.

Although the ALJ rejected the marked limitations in Dr. Rau's opinion, the ALJ did not explain why the mild to moderate limitations, found by Dr. Rau, as well as by the consultive state agency physicians, would not dictate a finding of severity at step two of the disability evaluation analysis. The ALJ is not "bound by findings made by state agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." The ALJ erred by failing to address the moderate limitations found by Dr. Rau and by the state agency physicians.

Because the ALJ made this finding at step two, the ALJ did not take these limitations into consideration when assessing Plaintiff's RFC. The ALJ made a determination that Plaintiff was capable of performing the full range of medium work. The ALJ based this finding on a consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence and other evidence... [and] opinion evidence in accordance with the requirements of [the regulations]. The ALJ did not consider the moderate limitations established by Dr. Rau, in fact, they were either not mentioned at all in the opinion, or they were noted as only a mild limitation (*eg*., the ability to perform activities within a schedule), nor were the moderate limitations assessed by the DDS physicians taken into consideration at all by the ALJ. These opinions, which the ALJ did not reject (Tr. 15-16), established moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; to work in coordination with others without distracting them or exhibiting behavioral extremes; to complete a normal workday and workweek without interruptions from psychologically based

symptoms; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Because the ALJ concluded at step two that Plaintiff's depression was not severe, further consideration as to whether Plaintiff's limitations of mental functioning were sufficiently severe so as to make the grids inapplicable at step five was foreclosed. The record presents uncontradicted evidence that Plaintiff had depression which resulted in mild to moderate limitations in his ability to function in the workplace.

Additionally, the ALJ acknowledged that the findings and assessment of Dr. Rothbaum, a consultative examiner, allow for the performance of a wide range of light work. Inexplicably, the ALJ, without rejecting this opinion, found that Plaintiff had the residual functional capacity to perform the full range of medium work. The ALJ erred by providing no specific or legitimate reasons, or any reasons at all for that matter, for rejecting Dr. Rothbaum's opinion.

D.    Plaintiff's Credibility

"An ALJ is not required to believe every allegation of disabling pain or other nonexertional impairment." *Orn,* 495 F.3d at 635 (internal quotation marks and citation omitted). When a medical impairment has been established, however, the ALJ must provide "specific, cogent reasons for the disbelief" and may not discredit a claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Lester,* 81 F.3d at 834. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Id* (internal quotation marks omitted). While an ALJ is responsible for determining the credibility of a claimant, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons. *Holohon v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722.) In addition, the ALJ must specifically identify the testimony he finds not to be credible and must explain what evidence undermines the testimony. *Id* The evidence upon which the ALJ relies must be substantial. *Orteza v.*

*Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345- 46 (9th Cir.1991) (*en banc* ).  In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record; observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen,* 80 F.3d at 1284; *see also Robbins v. Social Security Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), on conflicts between his testimony and his own conduct; or internal contradictions in that testimony.").

E.    Analysis - Plaintiff's Credibility

The ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  (Tr. 17) The ALJ found that "the objective medical findings and the level of treatment" are not suggestive of the level of severity alleged by Plaintiff.  "In the absence of medical evidence to support [Plaintiff's] allegations" the ALJ gave minimal weight to Plaintiff's testimony.  (Tr. 17)

While subjective pain testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant' pain and its disabling effects.  *Rolling v. Massanari*, 261 F.3d 853, 957 (9th Cir. 2001) (citing 20 CFR § 404.1529(c)(2)).  See also *Reddick*, 157 F.3d at 723 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because the are unsupported by objective medical evidence."; SSR 96-7p ("Symptoms cannot be measured objectively through clinical or laboratory diagnostic

technique"). Instead, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR 96-7p. Thus, an ALJ's credibility determination cannot be based solely on objective medical evidence.

Additionally, the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Bunnell*, 947 F.2d at 345-46 (citations omitted). Because the ALJ made no finding of malingering, the ALJ's reasons for discrediting Plaintiff's testimony must be "clear and convincing." While the ALJ listed several factors to be taken into account when evaluating the credibility of Plaintiff's statements, the ALJ took into account only two of these factors: the level of treatment and side effects of medication. These reasons are neither clear, nor convincing.

First, the ALJ failed to specifically identify the testimony he found not to be credible, or which was in contrast with the objective medical evidence. The findings made in rejecting the pain complaints must be specific to provide the court enough information to determine that the ALJ did not reject the claim arbitrarily, but based his decision on permissible factors. *Orteza*, 50 F.3d at 750; *Bunnell,* 947 F.2d at 345- 46. The ALJ did not point to specific reasons for his finding, supported by the evidence in the case record; nor was his brief explanation "sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statements and the reasons for that weight" as he is required to do. *See Robbins*, 466 F.3d at 884 (citing SSR 96-7p, 1996 WL 374186, SR 96-8p, 19996 WL 374184, at *7).

Specifically, the ALJ did not explain how the objective medical evidence, specifically the level of treatment Plaintiff received for his low back pain, related to his finding that Plaintiff was not credible. Plaintiff is treated with methadone, amongst several other medications, and with therapeutic exercises and electric stimulation therapy. Plaintiff regularly attended a pain clinic, and received injections to alleviate pain. There is no indication from any of the treatment records that more aggressive treatment was foregone in

favor of conservative treatment because the pain was not yet severe or disabling enough. Rather, in October, 2005, Plaintiff's physical therapist initially recommended conservative treatment to manage symptoms before any more aggressive measures needed to be taken. Later reports from Dr. Zeiller at TOI suggest that more aggressive treatment, *i.e.*, surgery, was not recommended because imaging studies did not reveal significant stenosis or disc degeneration, and because Dr. Zeiller believed Plaintiff had a sacroiliac dysfunction that would benefit most from conservative treatments, including physical therapy and injections. Thereafter, Dr. Feldman also recommended physical therapy, because, in his opinion, there was nothing on Plaintiff's MRI that would respond to intervention from a surgical standpoint.

The ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms. To then rely on the level of treatment to question Plaintiff's credibility concerning the intensity, persistence and limiting effects of these symptoms, when there is no indication from the treating physicians that if Plaintiff's symptoms were worse that surgery would be warranted, does not amount to any more than a back door finding that Plaintiff's statements are not fully corroborated by objective medical evidence. The ALJ failed to take any other factors into account, such as reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty); or conflicts between his testimony and his own conduct; or internal contradictions in that testimony. The only other factor mentioned by the ALJ was that there were no reported side effects of medication that were not managed by adjustments in medication. The ALJ did not explain how the management by his treating physicians of his medications to alleviate the side effects rendered his testimony not credible.

For the reasons set forth above, the Magistrate Judge recommends a finding that the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony were legally insufficient and not based on substantial evidence in the record.

F.    Remand/Reverse

The district court has discretion to remand for further proceedings or to award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). Remand for an award of

benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (citations omitted).   Where the test is met, "we will not remand solely to allow the ALJ to make specific findings...Rather we take the relevant testimony to be established as true and remand for an award of benefits." *Id* (citations omitted); *see also Lester,* 81 F.3d at 834.

As discussed above, the ALJ failed to discuss the relevant medical evidence in rejecting Plaintiff's allegations of depression at step two of the disability determination evaluation.   It is not clear from the evidence that consideration of the mild to moderate limitations found by Dr. Rau or the non-examining state agency physicians would have resulted in a step two finding of disability, or the necessity of testimony from a vocational expert at step five.   It may well be that consideration of the mild to moderate limitations will not have any affect on the outcome of Plaintiff's case.   *See e.g. Hoopai*, 499 F.3d at 1077 (finding in case not involving limitation to simple, repetitive tasks that the ALJ was not required to call a vocational expert where the claimant had mild or moderate depression). Consequently, under the circumstances, it cannot be said the ALJ would be required to find Plaintiff disabled if this evidence is credited.   Thus, there are outstanding issues that would preclude this Court from making a recommendation for an award of benefits.   Remand is appropriate where the ALJ is in a better position to evaluate medical evidence.   *See Marcia,* 900 F.3d at 176.

While the ALJ's failure to make proper findings discrediting Plaintiff's pain testimony requires reversal of the ALJ's decision, *see Varney v. Secretary of Health and Human Services* (*Varney II*), 859 F.2d 1396, 1401, (citing *Varney v. Secretary of Health and Human Services (Varney I)*, 846 F.2d 581, 584 (9th Cir. 1988), *relief modified in Varney II*), accepting Plaintiff's pain testimony as true does not establish that Plaintiff is entitled to disability benefits.   Plaintiff's testimony suggests that, beyond taking a long time in the

morning to get up because he is stiff, that he can sit, but he always fidgets, he walks a little in the morning and sits and talks with someone for about an hour, he also walks around in the afternoon, but then has to rest for half an hour, Plaintiff can drive, approximately 20 minutes, and then has to get out of the car. Plaintiff has a hard time concentrating on anything, but tries to read "off and on." Neither party has established how these impairments would affect a determination of Plaintiff's residual functional capacity under the guidelines. Thus, there are no facts presented that clearly indicate the proper outcome of steps four and five of the disability determination evaluation. Remand is appropriate to obtain a vocational expert's testimony to determine if these limitations would preclude a finding that Plaintiff is able to perform jobs that exist in sufficient numbers in the national or local economy. *See Varney II*, 572 F.3d at 597 (In cases "where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence" the case should be "remanded for further proceedings rather than payment of benefits.")(citing *Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The Magistrate Judge recommends that the appropriate remedy is to remand this case to the Commissioner of Social Security for further proceedings including testimony from a vocational expert if necessary.

**V.    RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court:

(1)    GRANT IN PART and DENY IN PART the relief requested in Plaintiff's Opening Brief (Doc. No 13). The request should be granted to the extent that Plaintiff seeks remand for further proceedings. The request should be denied to the extent Plaintiff seeks remand for an immediate payment of benefits; and

(2)    remand this matter for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy

thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 08-604-TUC-DCB.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 31st day of March, 2010.


_____
Bernardo P. Velasco
United States Magistrate Judge